## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

POST ACUTE MEDICAL AT HAMMOND, LLC d/b/a
Post Acute Specialty Hospital of Hammond
42074 Veterans Avenue
Hammond, LA 70403,

        Plaintiff,

    v.

SYLVIA MATHEWS BURWELL, Secretary
United States Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, DC 20201,

        Defendant.

Civil Action No. 16-1257

**COMPLAINT FOR REVIEW OF
AGENCY ACTION**

### INTRODUCTION

1.    This action arises under Title XVIII of the Social Security Act, as amended, 42

U.S.C. §§ 1395 *et seq.* (the "Medicare Act") and the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 551 *et seq.*

2.    Before filing this Complaint, the Plaintiffs received a final agency determination

from the Provider Reimbursement Review Board ("PRRB") granting the Plaintiff's request for

expedited judicial review ("EJR"), pursuant to which the Plaintiff now files this Complaint under

42 U.S.C. § 1395oo(f)(1).  The PRRB decided that it did not have authority to decide the

question of regulation at issue.  The PRRB's decision is attached hereto as Exhibit 1.

3.    By filing this Complaint, Plaintiff Post Acute Medical at Hammond, LLC d/b/a

Post Acute Specialty Hospital of Hammond seeks to set aside the wage index under the Long-

Term Care Hospital Prospective Payment System ("LTCH PPS") for Fiscal Year ("FY") 2016

promulgated by the Centers for Medicare & Medicaid Services ("CMS") and published in the

Federal Register on August 17, 2015.  *See* FY 2016 IPPS/LTCH PPS Final Rule, 80 Fed. Reg. 49,326, 49,797 (Aug. 17, 2015) ("FY 2016 Final Rule").

4.     CMS failed to properly promulgate the LTCH PPS wage index for the Plaintiff for FY 2016, in violation of the Administrative Procedure Act ("APA").

5.     The Defendant's improper adoption of the LTCH PPS wage index for FY 2016 harmed the Plaintiff by decreasing the Plaintiff's Medicare reimbursement for inpatient services rendered by Plaintiff's long-term acute care hospital by approximately $1,046,874 in FY 2016.

6.     Plaintiff requests that the Court rule that (i) the wage index under the LTCH PPS for FY 2016 is invalid as a matter of law, and (ii) the Secretary use the FY 2015 LTCH PPS wage index to reimburse Plaintiff's FY 2016 Medicare claims until the Secretary effectuates a policy, after reasoned analysis and notice and comment, to avoid or significantly reduce the negative impact of the reduction to Plaintiff's FY 2016 LTCH PPS wage index amount, and reduce year-to-year variability in Plaintiff's wage index amount in the future.

## JURISDICTION AND VENUE

7.     This action arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395 *et seq.* (Medicare Act) and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*

8.     Jurisdiction is proper under 42 U.S.C. § 1395oo(f).

9.     Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(e)(1).

10.     This Court has authority to grant the relief requested under 42 U.S.C. § 1395oo(f).

## PARTIES

11.      Plaintiff Post Acute Medical at Hammond, LLC d/b/a Post Acute Specialty Hospital of Hammond ("Plaintiff") operates a Medicare-certified long-term acute care hospital ("LTCH") (Medicare Provider No. 19-2036) located in Tangipahoa Parish County, Louisiana.

12.      Defendant Secretary, Sylvia Mathews Burwell ("Secretary"), is the Secretary of the United States Department of Health and Human Services ("HHS") and is sued in her official capacity.  The Secretary is responsible for the administration of the Medicare program.  The Secretary exercises the administrative responsibility of the Medicare program primarily through CMS, an agency of HHS.

## MATERIAL FACTS

13.      Section 123 of the Balanced Budget Refinement Act of 1999 ("BBRA"), Pub. L. No. 106-113, 113 Stat. 1501, as amended by section 307(b) of the Benefits Improvement and Protection Act of 2000 ("BIPA"), Pub. L. No. 106-554, 114 Stat. 2763, established an adjustment to the LTCH PPS standard Federal rate to account for differences in LTCH area wage levels.  The labor-related share of the standard Federal rate is adjusted to account for geographic differences in area wage levels by applying the LTCH PPS wage index.  *See* FY 2016 IPPS/LTCH PPS Final Rule, 80 Fed. Reg. 49,326, 49,797 (Aug. 17, 2015) ("FY 2016 Final Rule").  The applicable LTCH PPS wage index is derived from the cost reporting data of inpatient acute care hospitals within a prescribed geographic region, without regard to reclassifications.  *See id.*

14.      CMS instituted a significant change to the LTCH PPS wage index when it altered the statistical basis of how it delineates hospital labor market areas using the Core-Based Statistical Areas ("CBSAs") established by the Office of Management and Budget ("OMB") for

inpatient acute care hospitals. *See* FY 2015 IPPS/LTCH PPS Final Rule, 79 Fed. Reg. 49,854, 49,951 (Aug. 22, 2014) ("FY 2015 Final Rule"). The FY 2015 Final Rule transformed some urban counties into rural counties and vice-versa, while other existing CBSAs were "split apart." *Id.* Plaintiff belongs to one of the CBSAs that was "split apart." Plaintiff's county, Tangipahoa Parish, Louisiana, is listed in the FY 2015 Final Rule as one of the counties that changed from rural (CBSA Code 19) to urban (CBSA Code 25220 – Hammond, LA). *See id.* at 49,954. Typically, hospitals located in an urban area receive a higher wage index value than hospitals located in a rural area. *See id.* at 49,961.

15.     Under the previous rural geographic designation (CBSA Code 19), the CBSA for the Plaintiff's county included thirty-five different hospitals. Under the new urban geographic designation (CBSA Code 25220), there are only two hospitals – the Plaintiff and North Oaks Medical Center. *See id.* at FY 2015 Final Rule, Wage Index Public Use Files, FY_2015_FINAL_provcbsaahw, line 1283, *available at* https://www.cms.gov/Medicare/ Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads /FY2015-FR-Wage-Index-PUF.zip. North Oaks Medical Center ("North Oaks") is located in Hammond, Louisiana, across the street from the Plaintiff. North Oaks is a short-term acute care hospital paid under the inpatient hospital prospective payment system ("IPPS"). North Oaks was reclassified to a different CBSA wage index (CBSA 35380 – New Orleans-Metairie, LA) in 2014 to benefit from the higher urban CBSA. *See* Medicare Geographic Classification Review Board Decision, Case No. 14C0188 (2014), *referenced at* MGCRB 2014 Case Status Listing (Aug. 9, 2013) *available at* https://www.cms.gov/Regulations-and-Guidance/Review-Boards/MGCRB/Downloads/ MGCRB-2014-Decision-Listing-Case-Number.pdf. Accordingly, its wage index for FY 2016 is

0.8495 based upon its reclassified CBSA.  *See* FY 2016 IPPS/LTCH PPS Final Rule Correction, 80 Fed. Reg. 60,055 (Oct. 5, 2015) (Table 2 Corrected – Provider Number 190015).

16.     In the FY 2015 Final Rule, CMS provided a one year transition policy, with a 50/50 blended wage index, to address the short-term instability of the first year of the new CBSA-based wage index for any LTCH that was expected to have a decrease in its area wage index value solely due to the adoption of the new OMB delineations.  *See* FY 2015 Final Rule, 79 Fed. Reg. at 50,183-85.  CMS did not extend this transition policy to FY 2016, or provide any other transition policy for the LTCH PPS wage index in the FY 2016 Final Rule.  CMS also provided a three year transition policy for IPPS hospitals if they changed from an urban CBSA to a rural CBSA in FY 2015, but CMS did not provide this three year transition to LTCHs because the agency found no LTCHs that were changing from an urban to a rural CBSA.  *See id.* at 50,183.

17.     In the FY 2016 Final Rule, CMS used the new statistical basis to reduce the Plaintiff's wage level adjustment to 0.8167.  *See* FY 2016 Final Rule, 80 Fed. Reg. 49,326 (Aug. 17, 2015) (Table 12A – CBSA Code 25220 Hammond, LA).  This constituted approximately a fourteen percent decline from the Plaintiff's previous wage index of 0.9452.  *See* FY 2015 Final Rule, 79 Fed. Reg. 49,854 (Aug. 22, 2014) (Table 12A – CBSA Code 25220 Hammond, LA). The change in wage level adjustment decreased Plaintiff's Medicare reimbursement by approximately $1,046,874 in FY 2016, as calculated in the table below.

**Post Acute Specialty Hospital of Hammond
Wage Index Change Impact Calculation**

| | | |
|---|---|---|
| July 1, 2014 - June 30, 2015 Medicare days | 7,568 | A |
| Medicare revenue for same period | $    13,075,592 | B |
| Revenue PPD (B / A) | $    1,728 | C |

| | | | |
|---|---|---:|---|
| LABOR SHARE | | 0.62306 | D |
| WAGE INDEX (FY 2015) | | 0.94520 | E |
| WAGE INDEX (FY 2016) | | 0.81670 | F |
| | | | |
| PPD Related to Wage Index (FY 2015) (DxExC) | $ | 1,017 | G |
| PPD Related to Wage Index (FY 2016) (DxFxC) | $ | 879 | H |
| Difference (G-H) | $ | 138 | I |
| | | | |
| IMPACT OF FY 2016 CHANGE (IxA) | $ | 1,046,874 | |

18.     The steep decline in the Plaintiff's Medicare reimbursement is partly attributable to a decrease in wages for the geographic area corresponding to CBSA Code 25220.  However, because CBSA Code 25220 now contains only two hospitals, even a small decrease in wages has a disproportionate impact.  In fact, the abrupt reduction in the provider pool used to compute the wage index for CBSA Code 25220 has resulted in extreme wage index fluctuations that primarily hinge on the wages paid by a single large hospital in this CBSA, North Oaks Medical Center.

19.     Less than two months after issuing the FY 2016 Final Rule, CMS issued a correction notice that included a Corrected LTCH PPS Wage Index, but the wage index amount for the Provider did not change.  *See* FY 2016 IPPS/LTCH PPS Final Rule Correction, 80 Fed. Reg. 60,055 (Oct. 5, 2015) (Table 12A Corrected – CBSA Code 25220 Hammond, LA).

**MEDICARE PAYMENT FOR LONG-TERM CARE HOSPITAL SERVICES**

20.     Under the Medicare program, different payment methodologies are used to reimburse different types of providers.  The Medicare reimbursement system for LTCHs, the LTCH PPS, is based on different levels of cost than the system applicable to general acute care hospitals.  For general acute care hospitals, Medicare inpatient costs are reimbursed under the IPPS in which a hospital receives a fixed payment amount per discharge (adjusted for area wage differences) using diagnosis related groups ("DRGs").  The general acute care hospital DRG payment rate is based on the national average cost of treating a Medicare patient's condition in

that type of facility.  Although the average length of stay varies for each DRG, the average stay

of all Medicare patients in a general acute care hospital is approximately six days.  Thus, the

prospective payment system for general acute care hospitals is not designed to reimburse

hospitals on a regular basis for long-stay hospital care.

21.     For a hospital to be reimbursed under the LTCH PPS, it must have an average

Medicare inpatient length of stay that is greater than twenty-five days, which reflects the

medically complex cases treated in LTCHs.  Each patient discharged from an LTCH is assigned

to a distinct long-term care diagnosis-related group ("LTC-DRG"). [*] The LTCH is generally paid

a predetermined fixed amount applicable to the assigned LTC-DRG, adjusted for area wage

differences.  The payment amount for each LTC-DRG is intended to reflect the average cost of

treating a Medicare patient assigned to that LTC-DRG in an LTCH.

22.     Weights are assigned to DRGs and LTC-DRGs on an annual basis that are

multiplied against a Federal standard rate to arrive at the payment for the discharged patient,

after taking other adjustments into consideration.  *See* 42 C.F.R. §§ 412.515, 412.521.  Most of

the LTC-DRGs for LTCHs are the same as the DRGs for general acute care hospitals, but the

weights are generally higher.

23.     The geographic location of a hospital influences its Medicare payments.  This is

accomplished through the LTCH PPS by including a labor-related share in the standard Federal

rate.  Under the authority of section 123 of the BBRA, as amended by section 307(b) of the

---

[*] LTCHs are beginning to transition to a dual-rate payment system in which patient discharges that do not meet certain statutory patient criteria are paid a "site neutral" payment amount that is closer to the IPPS rate.  However, the site neutral payment option is not relevant here because the FY 2016 wage index at issue only applies to discharges paid under the standard Federal payment rate (*i.e.*, the original LTCH PPS rate).  *See* FY 2016 Final Rule, 80 Fed. Reg. at 49799 ("The FY 2016 LTCH PPS standard Federal payment rate wage index values that are applicable for LTCH PPS standard Federal payment rate discharges occurring on or after October 1, 2015, through September 30, 2016, are presented in Table 12A (for urban areas) and Table 12B (for rural areas), which are listed in section VI. of the Addendum of this final rule and available via the Internet on the CMS Web site.").

BIPA, CMS established an adjustment to the LTCH PPS standard Federal rate to account for differences in LTCH area wage levels.  *See* 42 C.F.R. § 412.525(c).  The labor-related share of the LTCH PPS standard Federal rate is adjusted to account for geographic differences in area wage levels by applying the applicable LTCH PPS wage index.  When the LTCH PPS was first implemented, CMS gave LTCHs a five year transition period to the full area wage level adjustment.  *See* 80 Fed. Reg. at 49,797.  In FY 2016, the labor-related share accounts for 62 percent of LTCH payments.  *See id.* at 49,798.

### LTCH PPS WAGE INDEX

24.     Under the LTCH PPS, CMS adjusts payments through wage indexes to reflect labor cost variations among localities.  CMS uses the OMB core-based statistical areas ("CBSAs") to identify labor markets and to calculate and assign wage indexes to hospitals.  CMS calculates a wage index for each CBSA and a statewide rural wage index for each State, based on the average hourly wage rate of the hospitals in those areas, divided by the national average hourly wage rate.  All hospitals within a CBSA or within a statewide rural area receive the same labor-related share.

25.     For the FY 2015 LTCH PPS, effective for discharges on or after October 1, 2014, CMS based the geographic classifications (labor market area definitions) on the new OMB labor market area delineations from the 2010 Decennial Census data.  *See id.* at 49,797.  CMS made these revisions because they believed that "these OMB delineations are based on the best available data that reflect the local economies and area wage levels of the hospitals that are currently located in these geographic areas."  *Id.*  CMS also believed "that these OMB delineations will ensure that the LTCH PPS area wage level adjustment most appropriately accounts for and reflects the relative hospital wage levels in the geographic area of the hospital

as compared to the national average hospital wage level." *Id.*  CMS used the same approach

with the IPPS in FY 2015.  *See* 42 C.F.R. § 412.64(b); FY 2015 Final Rule, 79 Fed. Reg. at

49,951-63.

26.     To "mitigate the impact imposed upon hospitals," CMS has "in the past provided

for transition periods when adopting changes that have significant payment implications,

particularly large negative impacts."  *See* FY 2015 Final Rule, 79 Fed. Reg. at 50,183.

Accordingly, CMS adopted a one year transition policy for LTCHs that experienced a decrease

in wage index in FY 2015 due to the new CBSAs.  *See id.* at 50,184.  The transition period

provided for a 50/50 blended area wage index value calculated as the sum of 50 percent of the

wage index computed under the FY 2014 CBSA designations and 50 percent of the wage index

computed under the new FY 2015 CBSAs.  *See id.*

27.     CMS generally updates the CBSA-based labor market area delineations for the

PPS wage indexes any year the CBSAs are updated by OMB.  *See* 80 Fed. Reg. at 49,797.  When

CMS developed the FY 2016 LTCH PPS proposed rule, OMB had not issued any updates to the

CBSAs subsequent to OMB Bulletin No. 13-01, dated February 28, 2013.  *See id.* at 49,798.

Therefore, for FY 2016, CMS continued to use the CBSA-based labor market area delineations

used in the FY 2015 LTCH PPS.

28.     To calculate wage indexes, CMS uses hospital wage data (which include wages,

salaries and related hours) collected 4 years earlier to allow time for the collection of complete

cost report data from all IPPS hospitals and for reviews of hospital wage data by CMS's payment

contractors.  CMS based the LTCH PPS wage indexes for FY 2016 on wage data collected from

IPPS hospitals' Medicare cost reports for their FYs that began during Federal FY 2012, without

taking into account geographic reclassification.  *Id.* at 49,797.  In this way, CMS uses IPPS hospital wage data as a proxy for determining the wage index values under the LTCH PPS.

29.     CMS publishes the wage index amounts for each LTCH annually, in the LTCH PPS payment update final rule.  The FY 2015 LTCH wage index values for LTCH discharges on or after October 1, 2014 through September 30, 2015 are presented in Table 12A (for urban areas) and Table 12B (for rural areas) of the FY 2015 Final Rule.  *See* CMS web site at: https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/LongTermCareHospitalPPS /Downloads/FY2015-FR-LTCH-Wage-Index.zip.  The FY 2016 LTCH wage index values for LTCH discharges on or after October 1, 2015 through September 30, 2016 are presented in Table 12A (for urban areas) and Table 12B (for rural areas) of the FY 2016 Final Rule.  *See* CMS web site at: https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/LongTermCare HospitalPPS/Downloads/FY2016-FR-LTCH-Wage-Indexes.zip.

**DECISION OF THE PROVIDER REIMBURSEMENT REVIEW BOARD**

30.     On October 6, 2015, Plaintiff submitted an Individual Appeal Request to the Provider Reimbursement Review Board ("PRRB").  At issue was whether CMS failed to properly calculate or adjust the wage index for the Plaintiff under the LTCH PPS for FY 2016. Plaintiff requested that the FY 2016 wage index be set aside and the wage index for the Plaintiff continue to be the FY 2015 wage index, or the matter remanded to the Secretary to determine a more appropriate wage index for FY 2016 that reduces the negative impact of the two-hospital CBSA in which the Plaintiff is located.

31.     Because this issue turns on the pure legal question of whether the FY 2016 LTCH PPS wage index is legally valid and enforceable, which the PRRB lacks authority to decide, Plaintiff requested expedited judicial review in order to bring the issue before this Court.

32.     The PRRB granted Plaintiff's motion for expedited judicial review on April 18,

2016.  *See* Ex. 1.

33.     The PRRB decided that it "lacks the authority to decide the legal question of

whether the regulation, the Provider's wage index was properly calculated under LTCH PPS."

*See* Ex. 1, at 4.  Accordingly, the PRRB found "that the wage index calculation for this LTCH

properly falls within the provisions of 42 U.S.C. § 1395oo(f)(1) and hereby grants expedited

judicial review on its own motion for the issue and the subject year."  *Id.*

## RULEMAKING REQUIREMENTS UNDER THE APA

34.     The Administrative Procedure Act sets forth the procedural requirements an

agency must follow in rulemaking.  An agency must (1) provide notice of the proposed rule

which sets forth "either the terms or substance of the proposed rule or a description of the

subjects and issues involved," 5 U.S.C. § 553(b); (2) "give interested persons an opportunity to

participate in the rule making through submission of written data, views, or arguments with or

without opportunity for oral presentation," *Id.* at § 553(c); and (3) incorporate "a concise general

statement of . . . basis and purpose" in the final rules it adopts.  *Id.*  These requirements "serve

important purposes of agency accountability and reasoned decisionmaking, [and] impose a

significant duty on the agency."  *Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1132 (D.C. Cir. 1995).

35.     To satisfy the APA's notice requirement, an agency must provide "sufficient

detail on [the proposed rule's] content and basis in law and evidence to allow for meaningful and

informed comment."  *Id.* at 1132.  Moreover, "in adopting the final rule, the agency must

'articulate with reasonable clarity its reasons for decision, and identify the significance of the

crucial facts.'"  *Id.* at 1133 (quoting *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851

(D.C. Cir. 1970)).  Notice is insufficient if parties are deprived of the opportunity to present

relevant information by lack of agency notice that the issue was there. *See Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 236 (D.C. Cir. 2008).

36.     The APA requires an agency action to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;" "contrary to constitutional right, power, privilege, or immunity;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A)-(C).

### RULEMAKING REQUIREMENTS UNDER THE MEDICARE ACT

37.     Section 1871 of the Medicare Act requires that the Secretary provide the public with adequate notice of a proposed rule and an opportunity to comment on that proposed rule. *See* 42 U.S.C. § 1395hh(b)(1) ("[B]efore issuing in final form any regulation . . . the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon").  In this way, the Medicare Act reinforces the notice and comment rulemaking requirements of the APA. *See also* 42 U.S.C. § 1395hh(a)(2) ("No rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the payment for services . . . shall take effect unless it is promulgated by the Secretary by regulation under [42 U.S.C. § 1395hh(a)(1)].").

38.     "Notice requirements are designed (1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005).  Under the Medicare Act, Congress holds the Secretary to the Medicare Act's notice requirements precisely

because proper notice gives affected parties an opportunity to evaluate the agency's proposals, offer constructive criticism and suggest ways to improve a proposed rule and offer alternatives.

39.     Like the APA, the Medicare Act also prohibits the Secretary from issuing a final rule that does not correspond directly to the proposed rule.  *See* 42 U.S.C. § 1395hh(a)(4) ("If the Secretary publishes a final regulation that includes a provision that is not a logical outgrowth of a previously published notice of proposed rulemaking or interim final rule, such provision shall be treated as a proposed regulation and shall not take effect until there is the further opportunity for public comment and a publication of the provision again as a final regulation.").  "An agency may promulgate a final rule that is different from a proposed rule, but only if the final rule is a "logical outgrowth" of the proposed rule, *i.e.*, only if "interested parties 'should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period.'"  *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 85-86 (D.D.C. 2012) (quoting *Int'l Union, UMWA*, 407 F.3d at 1259 and *Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 952 (D.C. Cir. 2004)), *aff'd in part, rev'd in part*, 746 F.3d 1102 (D.C. Cir. 2014).  Therefore, "neither a brand-new rule nor one built on vague insinuations for which an interested party would have had to 'divine [the Agency's] unspoken thoughts' will qualify as a 'logical outgrowth.'"  *Allina Health Servs.*, 904 F. Supp. 2d at 86 (quoting *Arizona Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1299 (D.C. Cir. 2000); *Int'l Union, UMWA*, 407 F.3d at 1260).

40.     Although the rulemaking requirements of the Medicare Act are *similar* to the rulemaking requirements in the APA, they are not identical.  For example, the "logical outgrowth" requirement at 42 U.S.C. § 1395hh(a)(4) does not contain a harmless error exception. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1109 (D.C. Cir. 2014).

## FIRST CLAIM FOR RELIEF

41.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 40 above as if fully stated herein.

42.     The Administrative Procedure Act, 5 U.S.C. §§ 500-576, requires the Secretary to adopt substantive changes to an existing regulatory scheme according to procedures set forth in the APA, rather than by amendment in a final rule without notice and comment.  Specifically, section 553 requires the agency provide the public with a meaningful opportunity to participate in the rulemaking process and compels publication or service of a substantive rule not less than 30 days before its effective date.

43.     CMS promulgated the FY 2016 LTCH PPS wage index without sufficient notice to allow an opportunity for the public to submit meaningful comments, and thus violated procedural requirements under the APA.  Specifically, CMS violated sections 553 and 706 of the APA by failing to adequately notify affected parties of the significance of its decision to retain for FY 2016 the revised labor market delineations that were adopted in the FY 2015 final rule, which prevented the Plaintiff and other hospitals from submitting meaningful comments before the rule was finalized.  Without sufficient information from CMS on the potential for significant variability in the wage index for hospitals that are located in regions with only a few hospitals in the revised CBSA, the Plaintiff could not understand the significance of the new CBSAs after the first year of implementation.  As a result, the public could not provide meaningful comments on this aspect of the FY 2016 LTCH PPS proposed rule.

44.     The Defendant's improper adoption of the FY 2016 LTCH PPS wage index harmed the Plaintiff by subjecting the Plaintiff to extreme wage index fluctuations that primarily hinge on the wages paid by a single large hospital in the CBSA.

- 14 -

45.     The FY 2016 LTCH PPS wage index should be set aside as invalid as promulgated because it is a substantive rule for which the Secretary failed to comply with notice and comment rulemaking under the APA.

## SECOND CLAIM FOR RELIEF

46.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 above as if fully stated herein.

47.     The Medicare Act requires that the Secretary establish or change substantive rules affecting payment for services through properly promulgated regulations.  *See* 42 U.S.C. § 1395hh(a)(2).  The public must be afforded adequate notice of not less than 60 days for a proposed rule, and an opportunity to comment on that proposed rule.  *See* 42 U.S.C. § 1395hh(b)(1).  A final Medicare rule must be a "logical outgrowth" of a proposed Medicare rule. *See* 42 U.S.C. § 1395hh(a)(4).

48.     CMS violated the Medicare Act by failing to give Plaintiff and other affected parties an opportunity to evaluate the agency's proposed FY 2016 LTCH PPS wage index and related policies, offer constructive criticism and suggest ways to improve the wage index with additional policies to address significant year-to-year variability in the wage index for CBSAs with few hospitals.  The absence of public comments directed to this issue confirms that CMS did not provide sufficient notice.  Plaintiff was directly harmed as a result.  The final FY 2016 LTCH PPS wage index revealed a significant decrease in Plaintiff's wage index amount. Plaintiff would have addressed this issue in comments to the proposed wage index if CMS had properly notified the public of the ongoing year-to-year variability in the wage index under the new CBSAs in areas with few hospitals.  Plaintiff could not anticipate this change, nor could it "divine [CMS's] unspoken thoughts" on this issue.

49.     The agency's failure to consider the destabilizing longer-term effects of its policy, and the resulting failure to adequately inform affected parties of these effects so as to permit informed comments, constituted a violation of Section 1871(a)(2), (a)(4) and (b)(1) of the Medicare Act.

50.     The FY 2016 LTCH PPS wage index should be set aside as invalid as promulgated because it is a substantive rule for which the Secretary failed to comply with notice and comment rulemaking under the Medicare Act.

### THIRD CLAIM FOR RELIEF

51.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 above as if fully stated herein.

52.     An agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), if "the agency . . . entirely failed to consider an important aspect of the problem."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983); *see also Summer Hill Nursing Home LLC v. Johnson,* 603 F. Supp. 2d 35, 39 (D.D.C. 2009).

53.     The FY 2016 LTCH PPS wage index suffers from substantive violations of the Administrative Procedure Act because CMS did not adopt policies to reduce the year-to-year variability of the wage index amount for LTCHs in revised CBSAs with few hospitals.  The one year transition policy for LTCHs that experience a decrease in wage index due to the new CBSAs did <u>not</u> address Plaintiff's situation, where new CBSA-based labor markets experience significant <u>ongoing</u> volatility in their wage index from year-to-year as a result of a very small provider pool for that labor market.  *See* FY 2015 Final Rule, 79 Fed. Reg. at 50,183-84, 50,395-96 (noting that the one year transition policy "mitigate[s] some <u>short-term instability</u> in LTCH

PPS payments….") (emphasis added).  CMS failed to recognize the ongoing impact of the new

CBSAs on this type of labor market and, as such, failed to adjust its wage index policies

accordingly.  The destabilization in wage indexes caused by the new geographic delineations is

not a short-term phenomenon for hospitals in CBSAs containing very small provider pools

because average labor costs will continue to be derived from only a few hospitals.

54.     The agency's failure to consider the destabilizing longer-term effects of its policy,

and the resulting failure to adequately inform affected parties of these effects so as to permit

informed comments, constituted a violation of Section 553(b)-(c) of the APA.

55.     The FY 2016 LTCH PPS wage index should be set aside as invalid as

promulgated because the Secretary's failure to consider an important aspect of the problem was

arbitrary, capricious and an abuse of discretion under the APA.

## FOURTH CLAIM FOR RELIEF

56.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 above

as if fully stated herein.

57.     The FY 2016 LTCH PPS wage index suffers from substantive violations of the

Administrative Procedure Act because CMS did not provide sufficient reasons for treating wage

index fluctuations caused by the FY 2015 LTCH PPS Final Rule differently from similar

situations.  An agency's action is arbitrary and capricious if the agency fails to provide sufficient

reasons for treating similar situations differently.  In order to comply with the APA's

requirement that an agency regulation cannot be "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), "the agency must examine the

relevant data and articulate a satisfactory explanation for its action, including a 'rational

connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of the*

*U.S., Inc.,* 463 U.S. at 43 (1983) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156,

168 (1962)).  By this standard, when an agency makes a policy change, it "must supply a

reasoned analysis indicating that prior policies and standards are being deliberately changed, not

casually ignored..."  *Cent. Or. Hosp. Dist. V. Sullivan,* 757 F. Supp. 1134, 1141 (D. Or. 1991)

(quoting *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C. Cir. 1970)).  In other

words, an agency cannot treat similar situations differently without providing a reasoned

explanation for why it decided to do so.  *Verdant Health Comm'n v. Burwell,* 127 F. Supp. 3d

1116, 1124 (W.D. Wash. 2015) (quoting *Muwekma Ohlone Tribe v. Salazar,* 708 F.3d 209, 216

(D.C. Cir. 2013)) ("Agency action is arbitrary and capricious if 'the agency offers insufficient

reasons for treating similar situations differently.'").

58.     CMS acted arbitrarily and capriciously in violation of the APA because its policy

of subjecting hospitals in areas with few hospitals to the general wage index policies caused high

wage index variability, which conflicts with CMS's decision to create special wage index

policies for hospitals in similar situations to reduce wage index variability.  CMS created a

special wage index policy treating hospitals located in Micropolitan Statistical Areas as rural

hospitals to reduce instability in year-to-year wage index values.  *See* FY 2015 Final Rule 79

Fed. Reg. at 50,182.  Similarly, CMS should have created a special policy to reduce year-to-year

variability in the wage index for the Plaintiff and other hospitals in regions with only a small

number of hospitals.  CMS performed a detailed analysis of the wage index variability issue for

hospitals in Micropolitan Statistical Areas and developed a special wage index policy to

minimize variability.  In contrast, CMS did <u>not</u> perform a detailed analysis of year-to-year wage

index variability for CBSAs with few hospitals.  CMS merely noted the problem <u>after</u> the

proposed rule was published for FY 2015 and the comment period had closed.  As a result, CMS

violated the APA by changing the Plaintiff's wage index without providing a reasoned

explanation for subjecting the Plaintiff to the wide fluctuations inherent in the new wage index

methodology.

59.     The FY 2016 LTCH PPS wage index should be set aside as invalid as

promulgated because the Secretary's failure to provide sufficient reasons for treating similar

situations differently was arbitrary, capricious and an abuse of discretion under the APA.

**PRAYER FOR RELIEF**

60.     **WHEREFORE, Plaintiff prays for judgment against Defendant as follows:**

A.     That the Court set aside the FY 2016 LTCH PPS wage index as invalid as

promulgated because it is a substantive rule for which the Secretary failed to comply with notice

and comment rulemaking requirements under the APA;

B.     That the Court set aside the FY 2016 LTCH PPS wage index as arbitrary,

capricious and an abuse of discretion, because the Secretary failed to consider an important

aspect of the problem;

C.     That the Court set aside the FY 2016 LTCH PPS wage index as arbitrary,

capricious and an abuse of discretion, because the Secretary failed to provide sufficient reasons

for treating similar situations differently;

D.     That the Court order the Secretary to use the FY 2015 LTCH PPS wage

index to reimburse Plaintiff's FY 2016 Medicare claims until the Secretary effectuates a policy,

after reasoned analysis and notice and comment, to (1) avoid or significantly reduce the negative

impact of the reduction to Plaintiff's FY 2016 LTCH PPS wage index amount, and (2) reduce

year-to-year variability in Plaintiff's wage index amount in the future;

E.     That the Court award Plaintiff's costs; and

F.      That the Court grant to Plaintiff such other and further relief that the Court

deems proper.


Dated: June 21, 2016

                                        Respectfully submitted,


                                         /s/ *Jason M. Healy*
                                        Jason M. Healy (D.C. Bar No. 468569)
                                        THE LAW OFFICES OF
                                        JASON M. HEALY PLLC
                                        1701 Pennsylvania Ave., N.W.
                                        Suite 300
                                        Washington, DC 20006
                                        (202) 706-7926
                                        (888) 503-1585 (fax)
                                        jhealy@healylawdc.com

                                        *Counsel for Plaintiff Post Acute Medical*
                                        *at Hammond, LLC d/b/a Post Acute*
                                        *Specialty Hospital of Hammond*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2016, I filed the foregoing document with the Clerk of Court via the CM/ECF system, causing it to be served electronically on Defendant's counsel of record.

/s/ *Jason M. Healy*
Jason M. Healy